UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 04-cr-00463-MSK

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. LINDA CARNAGIE,
2. NINA MARIE CAMERON,
3. LESLIE ROUSSEAU,
4. ALBERTICO GALINDO,
5. SONIA RAMIREZ,
6. SANDRA LINDSEY,
7. ROSAURA RAMIREZ,
8. GAIL HENDERSON,
9. DWAYNE VANDYKE,
10. CHRISTOPHER ALLEN,
11. DENISHA WALKER,
12. DAVID WOMELY,
13. RANDAL JONES,
14. SHEILA LOCKETT,
15. SHAWN GARRETTE,
16. **LINDA EDWARDS,**
17. **LADONNA MULLINS,**
18. TRENSON L. BYRD, aka TL Byrd,
19. EMMITT COTTON, SENIOR,
20. STAFFORD A. HILAIRE,
21. TYRONE TENNYSON,
22. ROBERT WEDGEWORTH,
23. DARYL COLLINS,
24. TRACIE LOCKHART,
25. AARON BLATHERS,
26. SEBASTIAN SCOTT,
27. MICHAEL KEYS,
28. QUNELL JEFFERSON,
29. DONNA BLACKLOCK,
30. MAURICE POOLE,
31. MONICA FITE,
32. AURELIA WALKER,
33. WENDY WILKINS, and
34. ODIE WEBSTER, III,
        Defendants.

## ORDER DENYING MOTIONS UNDER FED. R. CRIM. P. 29(a)

THIS MATTER is before the Court on oral motions for acquittal made at the close of the Government's case-in-chief by Defendants Linda Edwards and LaDonna Mullins. Having considered the arguments of all counsel, the Court

**FINDS** and **CONCLUDES** that:

Under Fed. R. Crim. P. 29(a):

> (a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

When a defendant moves for acquittal at the close of the government's case-in-chief, a court views the evidence in the light most favorable to the government in determining if there is substantial evidence from which a jury could find the defendant guilty beyond a reasonable doubt. *See United States v. Austin,* 231 F.3d 1278, 1283 (10th Cir. 2000). Evidence is sufficient to support a conviction if, in light of the direct and circumstantial evidence presented, a jury reasonably could find the defendant guilty beyond a reasonable doubt. *United States v. Hishaw*, 235 F.3d 565, 571 (10th Cir. 2000). However, a court does not weigh the evidence nor consider the credibility of the witnesses in making its determination. *See Austin,* 231 F.3d at 1283. A court should direct a verdict in favor of the defendant only if no rational trier of fact could find

the essential elements of the crime beyond a reasonable doubt. *See id.*

Ms. Edwards argues that she should be acquitted on the wire fraud charges in Counts 5, 6, 8, 10, 15 and 17 because there is no evidence that the contents of the electronic transmissions of FHA case numbers were false, and because there is no evidence that she could have foreseen that there would be electronic transmission of FHA case numbers.[1] Ms. Mullins also makes this same argument as to Counts 42, 43, 45 and 46.[2] In addition, Ms. Mullins argues that four of the wire fraud charges (Counts 42 through 45) are barred because there is no evidence that there was any risk of loss to a financial institution, and all of the testimony pertaining to a risk of loss was hypothetical and not tied to the transactions charged in these four counts.

The Government responds that there is no requirement for the contents of an electronic wire transmission to be false. It also contends that, based upon the evidence in the record, both Defendants could have foreseen the electronic transmission of FHA case numbers. Finally, with regard to Counts 42 through 45, it argues that the entirety of the record shows that there was a risk of loss to two FDIC-insured banks.

**I. Falsity of the Wire Contents**

To establish wire fraud, the Government must prove: (1) the defendant knowingly devised or intended to devise a scheme to defraud; (2) the defendant had a specific intent to defraud; (3) there was a materially false representation; and (4) the defendant used an interstate wire communication, or caused one to be used, to further the scheme. *See* 18 U.S.C. § 1343;

---

[1] This argument does not pertain to Count 16, for which the alleged wire was an electronic funds transfer.

[2] This argument does not pertain to Count 44, for which the alleged wire was an electronic funds transfer.

*United States v. Smith,* 133 F.3d 737, 742 (10th Cir. 1997) (elements 1, 2 and 4); *Neder v. United States*, 527 U.S. 1, 25 (1999) (adding element 3 for cases involving a false representation).

Ms. Edwards and Ms. Mullins contend that under *United States v. Lake*, 472 F.3d 1247 (10th Cir. 2007), the Government is also required to prove that the contents of the wire transmission were false. The Government disagrees, citing *United States v. Redcorn*, 528 F.3d 727 (10th Cir. 2008).

Although recent, neither of these decisions is binding in this case. Neither opinion holds that a wire communication must be false, or need not be false, for there to be wire fraud. In each case, the issue presented on appeal was whether the particular wire transmissions were in furtherance of a scheme to defraud, and references in the decisions to whether the transmission contained false information are pertinent to that context. For different reasons, in each case the court concluded that the wire transmissions did not further the alleged scheme. In *Lake*, the wire communications consisted of truthful statements which were required by law to be transmitted, and which would have been transmitted even in the absence of a fraudulent scheme. In *Redcorn*, the wire communications occurred after the scheme was completed. The opinions are harmonious in recognizing that a truthful communication (by wire or mail) may further a fraudulent scheme. *See Redcorn*, 528 F.3d at 738 (quoting from *Schmuck v. United States,* 489 U.S. 705, 715 (1989), which concluded that an innocent mail communication can further a scheme for purposes of the mail fraud statute).

In the case at bar, the alleged scheme to defraud was the use and submission of false documents to HUD to order to obtain FHA-insured loans. There was testimony that in order to obtain FHA insurance for a loan, it was necessary to obtain an FHA case number. Such number

was obtained electronically. Viewing the evidence most favorably to the Government, a jury reasonably could find, beyond a reasonable doubt, that transmission of the FHA case number was part of execution of the alleged scheme to defraud.

## II. Foreseeability of FHA Wire Transmissions

As discussed *supra*, the fourth element of a wire fraud charge is that the defendant used an interstate wire communication, or caused one to be used, to further the scheme. Although Tenth Circuit law is silent on the issue, Tenth Circuit Pattern Jury Instruction 2.57 addresses what it means to "cause" such wire communication: "To 'cause' interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen." Such pattern instruction is apparently derived from Tenth Circuit caselaw interpreting analogous language in the mail fraud statute. *See United States v. Sasser,* 974 F.2d 1544 (10th Cir. 1992) (citing *Pereira v. United States,* 347 U.S. 1 (1954)). The Tenth Circuit has repeatedly approved reliance on mail fraud caselaw in the wire fraud context, characterizing such caselaw as authoritative in both contexts. *See Redcorn*, 528 F.3d at 739 n.6 (citing *Lake*, 472 F.3d at 1255). Thus, this Court does so, as well.

Here, there is evidence that both Ms. Edwards and Ms. Mullins specifically requested FHA loans for their clients. There is also evidence that for a loan to become FHA-insured, an FHA case number must first be obtained. Further, there is evidence that, in order to obtain an FHA case number, someone uses a computer to access the CHUMS system, then the FHA case number is assigned and sent to the lender electronically by computer. There was also testimony that Ms. Edwards explained to at least one person what an FHA case number is, how such

number is issued, and that such number is necessary to obtain FHA insurance.[3] This evidence, viewed in combination and in a light most favorable to the Government, is sufficient for a jury reasonably to find, beyond a reasonable doubt, that Ms. Edwards and Ms. Mullins could reasonably foresee that for each FHA loan, there would be a request for an FHA case number and an interstate wire communication of that FHA case number to the lender.

**III. Applicability of 18 U.S.C. § 3293(2)**

Typically, the statute of limitation for a wire fraud charge is 5 years. 18 U.S.C. § 3282(a). However, under 18 U.S.C. § 3293,

> No person shall be prosecuted, tried, or punished for a violation of, or a conspiracy to violate– . . .
>> (2) section 1341 or 1343, if the offense affects a financial institution; . . .
>
> unless the indictment is returned or the information is filed within 10 years after the commission of the offense.

The phrase "affects a financial institution" is not defined in the statute.[4] However, the parties agree, and the caselaw supports, that an increased risk of loss to a financial institution is sufficient to demonstrate that a financial institution was affected. *See United States v. Agne,* 214 F.3d 47, 51-53 (1st Cir. 2000); *United States v. Serpico*, 320 F.3d 691, 694-95 (7th Cir. 2003).

Counts 42 and 45 pertain to real estate transactions involving Alvin Green and Mariea Powell. Evidence was presented that both of these individuals submitted false employment, income and other information to obtain an FHA-insured loan from National City Mortgage, a wholly owned subsidiary of FDIC-insured National City Bank. Evidence was also presented

---

[3] This particular testimony is considered only as to the charges against Ms. Edwards.

[4] The term financial institution includes a "depository institution" insured by the FDIC. 18 U.S.C. § 20(1).

that when false information of this type is submitted to National City Mortgage, it presents an increased risk of loss to National City Mortgage which passes through to National City Bank.

The Court is precluded from assessing the credibility of the witnesses who gave such testimony. Construing this evidence most favorably to the Government, a jury could reasonably find, beyond a reasonable doubt, that the allegedly false documents used in the Alvin Green and Mariea Powell transactions affected a financial institution.

Counts 43 and 44 pertain to a real estate transaction involving Michelle Bryant. Evidence was presented that Ms. Bryant submitted false employment, income and other information to obtain an FHA-insured loan from FT Mortgage Companies, a wholly owned subsidiary of FDIC-insured First Tennessee Bank. Evidence was also presented that when false information of this type is submitted to FT Mortgage Companies, it presents an increased risk of loss to FT Mortgage Companies, which flows through to First Tennessee Bank. Construing this evidence most favorably to the Government, a jury reasonably could find, beyond a reasonable doubt, that the allegedly false documents used in the Michelle Bryant transaction affected a financial institution.

**IT IS THEREFORE ORDERED** that the oral motions of Defendants Linda Edwards and LaDonna Mullins for acquittal under Fed. R. Crim. P. 29(a) are **DENIED**.

Dated this 21st day of July, 2008

**BY THE COURT:**

_Marcia S. Krieger_
Marcia S. Krieger
United States District Judge